**Morris FREEDMAN and Noah Freedman, doing business as Freedman Bros., Libelants,**

v.

**THE M/S CONCORDIA STAR, her engine, boilers, etc., the Skipsaksjeselskapet, Samuel Bakke, and Boise-Griffin Steamship Co., Inc., Respondents.**

United States District Court
S. D. New York.

Jan. 3, 1957.

Rothstein & Korzenik, New York City, for libelants. Samuel Rothstein and Henry M. Cohn, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for respondents. Tallman Bissell and Francis V. Elias, New York City, of counsel.

SUGARMAN, District Judge.

Libel by Morris Freedman and Noah Freedman, d/b/a Freedman Bros., against M/S Concordia Star, her engine, boilers, etc., the Skipsaksjeselskapet, Samuel Bakke and Boise-Griffin Steamship Co. Inc., for cargo damage.

## Findings of Fact

1. On July 18, 1953 at Khorramshahr, Iran, H. S. H. Ahmadzadeh (for Mohamadali Mottahedan & Bros. and Sherkat Tazamoni M. A. Mottahedan & Bros.) shipped to Iran Overseas Corp. of New York City 121 barrels of pickled skins on the "Concordia Star", a vessel engaged in the common carriage of goods by sea for hire and owned by respondent Bakke.

2. A bill of lading for 39 barrels and another for 82 barrels, acknowledging receipt thereof "in apparent good order and condition" was issued by the agents of the master of the "Concordia Star" on July 18, 1953.

3. The barrels were properly stowed and protected throughout the voyage which terminated at Brooklyn, N. Y. on September 19, 1953.

4. The barrels were outturned at Pier 3, Hoboken, N. J. a few days later not in good order and condition.

5. The damage to the contents of the barrels is reasonably attributable to the bad order and condition of the barrels at outturn.

6. Subsequent to July 18, 1953 and prior to September 19, 1953 libellants, in the ordinary course of trade and in reliance on the representation of good order and condition in the bills of lading, of which it then received duplicates, purchased the goods therein identified.

7. Libellants, after twice examining the barrels at Pier 3, Hoboken, after their outturn, took possession thereof on September 29, 1953.

8. Libellants paid consignee's agent for the goods on October 2, 1953.

## Conclusions of Law

I. This court has jurisdiction of the parties and subject matter of the suit.

II. The libel is dismissed as against respondent Boise-Griffin Steamship Co. Inc.

III. Libellants are entitled to a decree against remaining respondents.

IV. Unless stipulated, damages will be heard and reported by a Commissioner.

## Discussion

Discussion is required only as to Findings of Fact numbered 5 through 8.

The shipment was comprised of pickled skins folded in half and rolled twelve in a bundle. Approximately seven of these bundles were packed in each barrel, the number depending on the weight and size of the skins. Each barrel was lined with a paraffin cotton cloth lining which was tied bag fashion when full, after which the barrel head was put on. The pickle used was a standard one, comprised of ten per cent salt and two per cent sulphuric acid, which should preserve skins without decay for at least three years. On outturn, approximately ten per cent of the barrels were collapsed; seventy-five per cent of the balance had one or both heads missing and approximately five per cent had been re-coopered. Approximately fifty per cent of the paraffin cotton cloth linings were torn partially, some with pieces missing. The barrels were stained, staves were broken, the hoops were rusty and a number of the barrel heads were pushed in. Free water to a depth of four inches was found in the barrels and this had caused a putrefaction by washing the pickle out onto the outer surfaces of the barrels. The free water in the barrels and the attendant leaching of the pickling brine produced the deterioration ultimately found in the skins after portions of the two lots were tanned at the respondents' surveyors' suggestion to determine the full extent of the damage.

The analogy between the cargo here involved, and the skipper infested "third group" of 468 cases of cheese carried by the Carso [1] is clear. The ultimate decomposition of the skins was caused by the loss of the pickling following the entry of fresh water, probably rain, into the broken and stained containers. The decay was progressive and causally related to the obvious external condition of the cargo.

 Thus, if libellants relied on the representation of external good order and condition of the barrels recited in the bills of lading, they may recover for damage to the contents because it is reasonable to expect that had the containers (barrels and bags) been unbroken, free water could not have entered and dissipated the preservative.

Under such circumstances respondents cannot be heard to say, through their mate's deposition, that the cargo was received in the same bad condition found upon its discharge for "[w]hen a carrier has given a clean bill of lading, stating that cargo has been received in good order, though it was at the time manifestly damaged, the courts hold that it is estopped to deny the truth of the assertion against a purchaser of the bill of lading, who has been misled by the representation and has altered his position to his detriment on the faith of the representation." [2]

That libellants did not actually pay for the goods until after they examined and accepted them does not impair their status as purchasers of the bills of lading, misled by the representations therein who altered their position to their detriment in reliance on the representations. They attained that status when they contracted for the goods which were then on the high seas. Libellants considered themselves bound to the consignee and "were not called on to engage in a litigation involving such difficulties of proof and at the same time possibly damage their credits by dishonoring" their reputation in the skin market.[3]

The proof of damages offered at the trial was so contradictory that a reference to a Commissioner for ascertainment thereof, as in the ordinary course, is necessary unless the parties can stipulate thereto.

Submit decree accordingly.

---

1. The Carso, 2 Cir., 53 F.2d 374, certiorari denied Navigazione Libera Triestina v. Molinelli Giannusa & Rao., Inc., 284 U.S. 679, 52 S.Ct. 140, 76 L.Ed. 574.

2. Olivier Straw Goods Corp. v. Osaka Shosen Kaisha, 2 Cir., 27 F.2d 129, at page 133.

3. The Carso, D.C.S.D.N.Y., 43 F.2d 736, at page 745, reversed on other grounds, note 1 supra.